ROEHR v. BLISS et al.

(Circuit Court, D. Connecticut. September 21, 1897.)

PATENTS—INVENTION—DOOR AND WINDOW FRAMES.

The Boda patent, No. 385,233, for an improved interior door or window frame constructed in two sections divided longitudinally, and adapted to be applied to the wall opening from opposite sides, and then connected together, so that the frames may be completed in the factory, and thus facilitate the rapid finishing of the building, is void for want of patentable invention.

This was a suit in equity by Charles Roehr against Watson H. Bliss & Sons for alleged infringement of a patent for improved interior door or window frames. The cause was heard on a motion for preliminary injunction.

Charles L. Burdett, for complainant.
William E. Simonds, for defendants.

SHIPMAN, Circuit Judge. This is a motion for a preliminary injunction to restrain the defendants from the infringement of the first three claims of letters patent No. 385,233, dated June 26, 1888, issued to William J. Boda, for an improved interior door frame or window frame. The old and the patented method of making door frames and window frames is described by Mr. George Keller, a well-known architect, in his affidavit for the complainant, as follows:

"The old method of finishing the interior of buildings, as to the woodwork trimmings in the door and window openings, was to frame up these openings by cutting strips of wood to proper length and size, jointing the pieces, securing them in place, and then fitting and finishing by painting, varnishing, or otherwise, which method consumed a great deal of time. By the use of the Boda method, under patent No. 385,233, referred to, about four months' time in the finishing of this building for the Pope Manufacturing Company, hereinbefore referred to, was saved, as compared with the time that would have been required to finish with the wooden trimmings within the building under the old system. I understand the main feature of the invention to reside in making the trimmings, as a door frame, in two sections, divided longitudinally, and adapted to be applied to the wall opening from opposite sides, the facings having interlocking parts."

The interlocking of the two parts of the frame is not a necessary feature of the invention, for the patentee says in his specification that:

"It will be understood that my invention is not limited to the use of such interlocking jamb, as other methods of connecting the two parts of the completed frame may be employed. Furthermore, while one of the principal

objects of my invention is to so construct and apply the door frame that all nails, screws, and fastening devices, both for securing the component parts of the frame together, and for attaching the completed frame to the wall, are concealed from view, and a smooth and perfect finish obtained, it will be understood that a portion of the advantages of my invention may be derived by securing the two parts of the completed frame to the wall by means of screws or other fastening devices inserted through the facings from the outside, in which event their outer ends might be ornamented as desired, or might be concealed from view by the application of putty and paint in the usual manner."

The first three claims of the patent are as follows:

"(1) As a new article of manufacture, a completed door frame, consisting of the facings and the jamb divided longitudinally in two parts, the sections being secured to opposite facings, and adapted to be applied to the wall opening from opposite sides, substantially as described.

"(2) As a new article of manufacture, a completed door frame, consisting of the facings and an interlocking jamb divided longitudinally in two parts, the sections being secured to the opposite facings, and adapted to be applied to the wall opening from opposite sides, and locked together, substantially as described.

"(3) As a new article of manufacture, a completed door frame, consisting of the facings and the jamb divided longitudinally in two parts, having their abutting faces tongued and grooved, respectively, the sections being secured to the opposite facings, and adapted to interlock with each other when the two parts of the frame are applied to the wall opening from opposite sides, substantially as described."

It will be noticed that claim 1 describes no means by which the two parts of the jamb are to be secured together, while claims 2 and 3 call, respectively, for an interlocking jamb, and a jamb with the abutting faces tongued and grooved. The invention of the first claim is for a window frame, substantially completed in two sections before they are put into the window opening. Each of the sections has one part of a divided jamb. The facings on the opposite sides of the wall are secured to the respective sections, and the divisions of the jamb can be secured to each other and to the studding or wall in any proper way. The defendants have made the door frames for a building in Hartford by dividing the jamb vertically along the center, and fastening to the respective sections the facings which are to appear on the opposite sides of the wall. These sections were finished in the factory, and were then placed in a completed form in the building. The two sections were inserted in the opening in the wall from opposite sides, and were united by a tongue and groove strip. The lengthwise joint between the sections of the door jamb was covered by a rebate strip, which was secured in place by nails or screws. It may be assumed that the first three claims were infringed.

The Boda system of making door finishings is of advantage to builders or individuals who have large contracts or orders to be expeditiously filled. The frames are made in woodworking factories, where the whole work of framing, fitting, casing, oiling, polishing, and drying is expeditiously completed, in comparison with the slow method of constructing the entire woodwork upon a building by the same carpenters. This is simply saying that the system of manufacture upon a large scale, by the division of labor into departments, and the assistance of machinery, is far more expeditious, and in some cases more productive of good results, than the system of labor upon a small

scale, by workmen who take all the progressive steps of manufacture by the aid of ordinary tools. This saving of time, as the result of a business system, has little bearing upon the question of patentability. The patent is for an article of manufacture, and, in order to determine the question of patentability, it is necessary to see whether there is anything, either in the completed article or in the course of construction of the article made under the protection of the patent, which differs materially from the old article or its mode of manufacture under the old-fashioned method.

There is no novelty in the frame as a whole. It is made in the way in which frames have always been made, and with the same parts, and with the same mechanical characteristics, that they have always had, and all the steps in the manufacture are the same. The difference in the method or course or mechanical means of construction is that in one case the separate parts of the sections are nailed together or mechanically united together before they are put in the wall opening, and in the other case the parts of the frame are placed in the wall opening separately, and are then united together. In the one case the pieces are assembled in the factory, and the window frames are sent by the car load to the building, and in the other the same pieces are gradually assembled in the building, and are then fitted and framed together. No patentable invention can be perceived in the modern article. The steps by which it progresses from a board to a frame are the customary steps. The improvement is not in the article, nor in its method of construction, but in the business system under which the article is made. It would naturally be supposed that this system would have made its appearance in carpenters' shops before woodworking factories were established; and, if the numerous affidavits by reputable carpenters living in Hartford are true, the supposition would be well founded. For example, one carpenter says that over 20 years ago, in the regular course of his business, he made window casings in two parts or halves; that in each half the facings and half of the jamb were fastened together before the two halves were put in place, and fastened by dowels in the window opening. This class of testimony is repeated by several builders. Three of them say, in substance, that "the idea of making and joining parts of the casing of a door or window, and uniting such joined parts into a whole when the casing is put in place, for saving time, is by no means original with the said Boda. That idea and mode of procedure were practiced by carpenters in the ordinary prosecution of their business, to my knowledge, as early as 1881, and continuously ever since." One of them says that this method "is but the legitimate and inevitable result of the making of carpenter work by machinery, which the increasing competition—first felt about twenty years ago—has forced upon builders." It is not necessary, in my opinion, to consider whether these affidavits are sufficient upon the question of an anticipation of Boda's invention, as described in the first three claims, for there seems to me to have been nothing patentable in its character. The motion is denied.